IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| SCOTT C. ANGLIN, ) | 4:10CV3230 |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | MEMORANDUM AND ORDER |
| ) | |
| CABELA'S OUTDOOR ) | |
| ADVENTURES, INC., and ) | |
| BARRY G. BURCHELL, ) | |
| ) | |
| Defendants. ) | |

Both defendants have filed motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). The motions will be granted, and this case will be dismissed.

## I. BACKGROUND

Plaintiff Scott Anglin ("Anglin") alleges that Defendants Cabela's Outdoor Adventures, Inc. ("COA") and Barry Burchell ("Burchell") violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., and committed the tort of intentional infliction of emotional distress ("IIED") under Texas law. To say the least, this is an unusual case.

### A.

Greatly condensed and summarized, the genesis of this case was a hunting trip to South Africa that Anglin, a Texas resident, booked with Burchell through COA in 2002. During or after the trip, Anglin and Burchell evidently established some sort of a business or personal relationship.

Thereafter, Anglin began to investigate the way Burchell operated the safari business. In turn, a dispute arose that led to litigation in South Africa. Burchell, a South African citizen, brought suit against Anglin in 2005 in the High Court of South Africa, Eastern Cape Division, alleging defamation and other claims. Anglin counterclaimed for fraud, and the parties have been vigorously litigating against each other in South Africa ever since.

The main defamation claim is currently set for trial in 2011. However, Anglin's fraud counterclaim against Burchell in the South African litigation was dismissed with prejudice by the South African court in 2009.[1]

As Anglin admits in his Complaint, a "relatively small" claim asserted by Burchell on an account or debt was resolved in Burchell's favor, but for a fraction of the amount Burchell claimed. (Filing no. 1 at CM/ECF p. 6.) Other claims, apparently separate from the main defamation claim, asserted against Anglin by Burchell have been rejected.

COA is not a party to the South African lawsuit. However, as part of this ongoing foreign litigation, Anglin obtained third-party discovery from COA through

---

[1]*See Barry Grant Burchell v. Scott Anglin*, Case No. 1134/05, dated April 30, 2009. (Filing no. 22-2.) At the Rule 12(b)(6) stage of proceedings, the court may take judicial notice of matters of public record referenced in the complaint. *See Katun Corp. v. Clarke*, 484 F.3d 972, 975 (8th Cir. 2007); *Deerbrook Pavilion, LLC v. Shalala*, 235 F.3d 1100, 1102 (8th Cir. 2000). This includes parallel court proceedings. *See Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007) (taking judicial notice of a state court's dismissal of plaintiff's parallel suit when dismissing a case on limitations grounds at the 12(b)(6) stage.). Courts also have the right to take judicial notice of judicial activity in foreign courts. *See McDonnell Douglas Corp. v. Islamic Republic of Iran*, 758 F.2d 341, 346 (8th Cir. 1985) (taking judicial notice of the status of Iranian courts and refusing to enforce a forum selection clause selecting Iran). In short, the ongoing South African lawsuit is a matter of public record that I may take notice of at the Rule 12(b)(6) stage.

this court pursuant to 28 U.S.C. § 1782(a).  See *In re Scott Anglin*, Case No. 7:09CV5011 (D.Neb., filed Nov. 25, 2009).

### *B.*

Summarized and condensed, Anglin's RICO claims are essentially that Burchell controlled a hunting operation in South Africa that allegedly violated a wide variety of South African and Namibian hunting and tax laws.  Anglin further alleges that he tried to inform COA of these foreign illegal activities but that, in response, COA and Burchell jointly "retaliated" against him and "intimidated" him "primarily" through Burchell's filing of the South African Lawsuit in 2005.  Thus, the "pattern of racketeering activity" in which Burchell and COA are alleged to have engaged was the filing of the South African suit combined with the alleged mail and electronic communications related to that suit, with the underlying "predicate acts" of racketeering activity being witness intimidation and mail or wire fraud.

Summarized and condensed, the IIED claim, under Texas law, is that the South African litigation filed by Burchell is baseless.  It is also claimed that COA supported the lawsuit to intimidate Anglin and deter him from disclosing to the authorities Burchell's wrongful behavior which COA knew would potentially harm the jointly controlled business of Burchell and COA.

### *II. ANALYSIS*

While the motions to dismiss might be granted on a variety of grounds, two are most persuasive.  Finding it unnecessary to address each of the several grounds for dismissal asserted by defendants, I limit my ruling and the associated discussion to the two grounds I conclude are most compelling.

*A.*

Although he thinks they are wrong, Anglin admits (filing no. 29 at CM/ECF p. 11) there is a recent line of federal cases holding that RICO's reach is not extraterritorial where the principal actions and events underlying the claim occurred outside of the United States. *See*, *e.g.*, *Norex Petroleum Ltd. V. Access Inds., Inc.*, 631 F.3d 29, 32-33 (2nd Cir. 2010) (RICO did not have extraterritorial application to claim that defendants participated in widespread racketeering and money laundering scheme with the goal of seizing control over most of the Russian oil industry through the use of Russian oil companies, even if some domestic conduct occurred) (applying the Supreme Court's decision in *Morrison v. National Australia Bank Ltd.*, ─ U.S. ─, 130 S.Ct. 2869 (2010) (absent an express intention by Congress of extraterritorial effect, a statute applies only domestically)); *In re Toyota Motor Corp.*, ─ F. Supp.2d ─, 2011 WL 1485479 at *16-18 (C.D. Cal., April 8, 2011) (discussing *Morrison*, *Norex* and other cases and dismissing RICO claim). Anglin has cited no authority that contradicts this line of cases.

There is no dispute that the principal actions or events underlying the RICO claims occurred in South Africa and outside the United States. That is true even though there was some conduct that allegedly occurred domestically. Following the Second Circuit's thoughtful decision in *Norex*, the motions to dismiss the RICO claims will be granted.

*B.*

The IIED claim under Texas law must be dismissed as well. As a Texas court has succinctly said,

> We are unable to conclude that the pursuit of a remedy through legal process, however invasive, or even injurious, constitutes outrageous conduct beyond the bounds of decency, such as that which must be

> established to recover for intentional infliction of emotional distress. A party "must have latitude to exercise these rights in a permissible way, even though emotional distress results."

*Montemayor v. Ortiz*, 208 S.W.3d 627, 656-657 (Tex. App. 2006) (obtaining a court ordered receivership did not constitute intentional infliction of emotional distress) (citations omitted).

Dismissal is particularly appropriate here. It is undisputed that the South African litigation has resulted in a partial judgment (1) in favor of Burchell on one of his claims and (2) the dismissal of Anglin's fraud counterclaim. Furthermore, it is undisputed that the main defamation claim has not even been tried yet. These additional circumstances make it all the more clear that Texas would not recognize Anglin's IIED claim.

IT IS ORDERED that the motions to dismiss (filing no. 20 and filing no. 23) are granted. A separate judgment will be issued.

DATED this 10th day of August, 2011.

BY THE COURT:

*Richard G. Kopf*
United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.